**WO**                                                                                           SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Walter C. Goedecke, | No. CV 06-1735-PHX-JAT (LOA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora B. Schriro, et al., | |
| Defendants. | |

Plaintiff Walter C. Goedecke, who is confined in the Arizona State Prison Complex (ASPC) in Florence, Arizona, filed this *pro se* civil rights action against various officials of the Arizona Department of Corrections (ADC). The Court ordered Defendants Bevins, Lynch, and Hernandez to answer Count I of the First Amended Complaint and dismissed the remaining claims and Defendants. (Doc. #7.) Sergeant Bevins and Officers Lynch and Hernandez move for summary judgment.[1] (Doc. #40.) The motion is fully briefed. (Doc. ##45, 47.)

The Court will deny the motion.

**I.    Background**

In his First Amended Complaint, Plaintiff alleged that on August 25, 2005, at approximately 1:00 p.m., Plaintiff asked Hernandez for protection from inmate Wood,

---

[1] The Court issued a Notice pursuant to Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998) (*en banc*). (Doc. #42.)

1  Plaintiff's cellmate, because Wood repeatedly made verbal threats against Plaintiff. (Doc.
2  #6.) Specifically, Plaintiff alleged that Wood threatened to kill Plaintiff if Plaintiff did not
3  comply with Wood's sexual demands. Plaintiff alleged that Hernandez called Defendants
4  Bevins and Lynch and told them of the situation. Plaintiff further claimed that Bevins did
5  not believe Plaintiff and ordered him back to his cell. Subsequently, Plaintiff alleged that he
6  was assaulted by inmate Wood and suffered cuts and bruises on his mouth, eyes, and nose;
7  required stitches on his right eye; and his vision was permanently damaged.

8  Defendants argue that they did not fail to protect Plaintiff because (1) the cellmate did
9  not pose an intolerable risk of harm and (2) they were not aware of any legitimate physical
10 risk. Plaintiff argues that he told Defendants that Wood was threatening Plaintiff with
11 physical harm if Plaintiff did not have oral sex with Wood.

## II. Legal Standards

### A. Summary Judgment

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party who must demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 250; see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). Rule 56(e) compels the non-moving party to "set out specific facts

- 2 -

1 showing a genuine issue for trial" and not to "rely merely on allegations or denials in its own
2 pleading." Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
3 475 U.S. 574, 586-87 (1986). The opposing party need not establish a material issue of fact
4 conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require
5 a jury or judge to resolve the parties' differing versions of the truth at trial." First Nat'l Bank
6 of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). However, Rule 56(c) mandates
7 the entry of summary judgment against a party who, after adequate time for discovery, fails
8 to make a showing sufficient to establish the existence of an element essential to that party's
9 case and on which the party will bear the burden of proof at trial. Celotex, 477 U.S. at 322-
10 23.

11 When considering a summary judgment motion, the court examines the pleadings,
12 depositions, answers to interrogatories, and admissions on file, together with the affidavits,
13 if any. Fed. R. Civ. P. 56(c). At summary judgment, the judge's function is not to weigh the
14 evidence and determine the truth but to determine whether there is a genuine issue for trial.
15 Anderson, 477 U.S. at 249. The evidence of the non-movant is "to be believed, and all
16 justifiable inferences are to be drawn in his favor." Id. at 255. But, if the evidence of the
17 non-moving party is merely colorable or is not significantly probative, summary judgment
18 may be granted. Id. at 249-50.

19 **B.    Threat to Health and Safety**

20 To prevail on a claim under the Eighth Amendment for a threat to health and safety,
21 a prisoner must demonstrate deliberate indifference to a substantial risk of serious harm.
22 Farmer v. Brennan, 511 U.S. 825, 828 (1994). Eighth Amendment liability requires "more
23 than ordinary lack of due care," in other words, the inmate must show more than negligence.
24 Id. at 835. A plaintiff must show a "substantial risk of serious harm"—the risk must be
25 objectively sufficiently serious. Id. at 834. In addition, the defendant official must have a
26 sufficiently culpable state of mind; that is, he must be deliberately indifferent. Id.

27 To act with deliberate indifference, a prison official must both know of and disregard
28 an excessive risk to inmate health; the official must both be aware of facts from which the

1 inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id. at 837. Thus, an inmate must satisfy a subjective requirement. Id. 838. However, the inmate need not show that the defendant acted or failed to act believing that harm would actually befall the inmate; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. Whether the official had the necessary knowledge is a question of fact; it may be demonstrated in the usual ways, including inferences drawn from circumstantial evidence, "and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

### III. Motion for Summary Judgment

#### A. Parties' Contentions

In support of their motion, Defendants submit excerpts from Plaintiff's deposition (Doc. #41, Ex. A, Pl.'s Dep. Sept. 11, 2007); information reports regarding the assault (id., Ex. B); incident management reports regarding the assault (id., Ex. C); and grievances and responses regarding the assault (id., Ex. D). They assert that, at the time of the incident, Plaintiff was housed in a cell with inmate Wyatt Wood. (Doc. #41, Defs.' Statement of Facts (DSOF) ¶¶ 3, 5.) On August 25, Plaintiff told Hernandez that Wood was asking Plaintiff to perform oral sex. (Id. ¶ 6.) Hernandez notified supervisor Sergeant Field, and Bevins and Lynch were called to Plaintiff's unit. (Id. ¶¶ 7-8.) Bevins and Lynch interviewed Plaintiff, who gave them the same information Plaintiff provided to Hernandez. (Id. ¶¶ 9-10.) Plaintiff told Bevins and Lynch that he did not want to go back to his cell because Woods was asking for oral sex; when asked if Woods was threatening him, Plaintiff replied "no." (Id. ¶¶ 11-12.) Defendants contend that Plaintiff admitted that Wood had not threatened him prior to the actual incident on August 25; Wood had only made sexual advances. (Id. ¶ 12.)

Defendants assert that in his deposition, Plaintiff testified that he told Officer King three or four days prior to the incident that Plaintiff had submitted an Inmate Letter requesting a cell move because he "just couldn't get along" with Woods, that Woods was a "whacko," and that he didn't "like this dude." (Id. ¶ 13.) After being contacted by

1  Hernandez on the day of the incident and speaking with Plaintiff, Bevins and Lynch assessed
2  the situation and told Plaintiff that his issue was not a valid reason for a cell move and that
3  Plaintiff needed to submit an Inmate Letter requesting a cell move. (Id. ¶¶ 14-15.) Plaintiff
4  claimed to have submitted such a letter but none has ever been located. (Id. ¶¶ 15.) Bevins
5  and Lynch advised Plaintiff that because he had no issues with Woods, Plaintiff needed to
6  be placed back in his current housing, and Plaintiff returned to his cell. (Id. ¶¶ 16-17.) Once
7  Plaintiff was back in his cell with Woods, they had an argument. (Id. ¶ 18) Plaintiff told
8  Woods not to touch Plaintiff's underwear, which was drying on a stool. (Id.) Woods replied
9  that he would touch Plaintiff's underwear or Plaintiff any time he wanted. (Id.) Plaintiff
10 replied no, and the fight broke out. (Id.)

11       Defendants argue that Plaintiff's fears were speculative and did not rise to the level
12 of a substantial risk as required by the Eighth Amendment. (Doc. #40 at 5.) They assert that
13 Plaintiff conceded that Woods had not threatened him prior to the incident and that he wanted
14 to switch cells because he did not like him. Additionally, Defendants evaluated Plaintiff's
15 concerns and determined that he was not in any physical danger. (Id. at 6.) Defendants
16 contend that Plaintiff's inconsistent allegations are insufficient to meet the standard of a
17 strong likelihood of injury. (Id. at 7.) They also maintain that Plaintiff cannot show
18 deliberate indifference because Plaintiff told Bivens that Woods was not threatening him.
19 (Id. at 8.) Last, they argue that although Plaintiff alleged that he was being physically
20 threatened because he refused oral sex, the actual argument was over laundry and Defendants
21 cannot be deliberately indifferent to an argument that turned violent over a matter other than
22 what Plaintiff complained of. (Id. at 8.)

23       Plaintiff denies telling Bevins that Woods had not threatened him. (Doc. #45, Pl's.
24 Statement of Facts (PSOF) at 1.)  He asserts that he told Hernandez that Woods was
25 threatening him and that Hernandez immediately notified Bevins and Lynch, who
26 interviewed Plaintiff. (Id. at 2, Ex. 1.)  He admits that he did in fact ask to be moved the
27 night before, when he returned from the hospital. (Id. at 2.) In addition, in his verified First
28 Amended Complaint, Plaintiff alleged that he told Hernandez that Woods had threatened his

life if Plaintiff did not perform oral sex on him. (Doc. #6 at 4.) He also alleged that he told Bevins and Lynch of Wood's threats to Plaintiff's life and threat to rape him but Bevins said he did not believe Plaintiff. (Id.)

In their reply, Defendants argue that there is no evidence that Hernandez did anything other than inform her supervisors of Plaintiff's concerns and that the matter was then investigated by other officers; therefore, summary judgment should be granted as to Hernandez. (Doc. #47 at 1.) Bevins and Lynch were not deliberately indifferent because they investigated the risk to Plaintiff. They argue that by taking reasonable actions to assess the risk, they were not deliberately indifferent, even if they drew an erroneous conclusion. They also submit a Supplemental Statement of Facts. (Doc. #48, DSSOF.) They assert that Bevins interviewed Plaintiff in a room away from other inmates and Plaintiff had every opportunity to say that his life was in danger but did not. (Id. ¶ 2.) Bevins asked Plaintiff if he felt that his life was in danger or whether he was in fear of bodily injury; Plaintiff said no and refused to accept protection. (Id.) Bevins opines that the assault was staged, noting that Wood looked over his shoulder several times as if to make sure that Bevins was looking as Wood hit Plaintiff and that Wood immediately stopped the assault on the first command to do so. ( Id. ¶¶ 6-8.)

**2.     Analysis**

Most of the material facts are undisputed. Defendants admit that they were notified of a complaint by Plaintiff regarding his cellmate Wood. They acknowledge that they spoke with Plaintiff about Wood. It is also undisputed that Plaintiff was assaulted on August 25, after he was ordered to return to his cell.[2] The Court finds, however, that there is a material dispute of fact regarding whether Wood threatened Plaintiff with physical harm prior to the incident and whether Plaintiff informed Defendants that Wood had so threatened him.

---

[2]The Court will not consider Defendants' Supplemental Statement of Facts, which was submitted after Plaintiff responded to the motion for summary judgment. Even if the Court were to consider Bevin's speculation that the fight between Plaintiff and Woods was staged, it is simply another disputed fact.

- 6 -

Defendants argue that Plaintiff does not meet either the objective or subjective requirement for an Eighth Amendment claim. See Farmer, 511 U.S. at 834. They claim that Plaintiff concedes that Wood did not threaten him prior to the incident and that Plaintiff wanted to switch cells because he did not like Wood. (Doc. #40 at 6.) They point to Plaintiff's deposition testimony in which he stated that three or four days before the incident he submitted an Inmate Letter requesting a cell move because he "just couldn't get along" with Wood (Doc. #40, Ex. A, Dep. 17:1-2), that Wood was a "whacko," (id. 16:21-22), that he "didn't like this dude" (id. 38:16-25). Defendants assert that Plaintiff's allegations now that he was in danger are speculative and there was no strong likelihood of a risk to Plaintiff. (Doc. #40 at 5.) They also assert that they were not aware of a legitimate risk of physical harm because Plaintiff told Bevins that Wood was not threatening Plaintiff. (Doc. #40 at 8.)

Reviewing the limited deposition excerpts provided by Defendants, the Court finds that Defendants mischaracterize Plaintiff's testimony and that Plaintiff did not concede that there was no threat before the assault. Plaintiff testified that he spoke with Officer King approximately three days before the August 25 incident and told King that Plaintiff needed to move and that Wood was making sexual innuendos, which Plaintiff would brush off. (Id.; Ex. A., Pl. Dep 15:10-16, 16:17-22.) When asked if August 25 was the first day Wood threatened him, Plaintiff responded yes. (Id. 16:13-17, 17:3-6.) But Plaintiff also testified that on August 25, before they went to the showers, Wood threatened Plaintiff with sexual assault. (Id. 18: 18-25, 19:1-13.) Plaintiff further testified that he told Hernandez about the threat soon after it was made and that after telling Hernandez, Plaintiff spoke with Bevins and Lynch and told them "this dude wants me to have oral sex with him. If I don't have oral sex with him, that he's going to take it anyway, meaning that he's going to, you know, screw me. You know, try and sexually assault me." (Id. 19:19-25, 36:8-22.) In addition, Plaintiff submits what appears to be Hernandez's Response to Non-uniform Interrogatories, in which she states that she did not ignore Plaintiff's safety concerns and that "Plaintiff told her that inmate *Woods was threatening him.* Defendant immediately notified Sgt. Bevins and S.S.U. Officer Lynch of Plaintiff's complaints, and they interviewed Plaintiff regarding his

- 7 -

complaint in Defendant's presence." (Doc. #45, Ex. A, NUI 3.) (Emphasis added.) She also stated that "she immediately informed Sgt. Bevins and Officer Lynch that Plaintiff had a *complaint about his safety* with his celle (or cellmate)." (Id., NUI 17.) (Emphasis added.) Thus, Plaintiff provides evidence that Wood threatened him with assault before the incident and that Plaintiff informed Defendants of the specific threat.

Viewed in the light most favorable to Plaintiff, his statements regarding a threat from Wood are not inconsistent: Plaintiff complained to Officer King regarding Wood approximately three days before August 25, although Wood had made no threats at the time of the complaint to King; but on August 25, Wood threatened to sexually assault Plaintiff if Plaintiff did not perform oral sex on Wood. In other words, Plaintiff's evidence shows that the problem with Wood escalated in a short period.[3]

Furthermore, although Defendants argue that Plaintiff's fears were merely speculative, viewed in the light most favorable to Plaintiff, the evidence shows that Wood specifically threatened Plaintiff with physical harm. Taking Plaintiff's facts as true, the cases relied on by Defendants do not support their contention of merely speculative fears. In Contreras v. Collins, 50 Fed. Appx. 351, 352 (9th Cir. 2002),[4] the court found the plaintiff's fears speculative because they were based only on the fact that he came from the same region as a gang with which he had no other connection; see also Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (a statement that there was a "racial problem" in plaintiff's cell was insufficient to show defendant was aware of a likelihood of assault; plaintiff did not say that he had been threatened or that a fight was imminent or that he feared attack); Latimore v. Widseth, 7 F.3d 709, 713 (8th Cir. 1993) (reversing a denial of summary judgment to a prosecutor who had neither the responsibility nor ability to protect plaintiff from harm inflicted by other inmates).

---

[3] It appears that Plaintiff and Wood were cellmates for only a short time before the assault. (Pl. Dep. 15:6-9.)

[4] Defendants cite an unpublished opinion from 2002, in violation of U.S. Ct. of App. 9th Cir. Rule 36-3.

Likewise, taking Plaintiff's facts as true, Plaintiff told Hernandez of the threats of assault and threats to Plaintiff's safety, and Hernandez and Plaintiff told Bevins and Lynch of the threats of assault. Thereafter, Bevins and Lynch determined that Plaintiff and Wood had "no issues" that would merit a move, and they returned Plaintiff to the cell, where he was assaulted by Wood. Because Plaintiff informed Defendants of the threat to his safety, there is evidence from which a jury could find that Defendants knew of a risk to Plaintiff and ignored it. In other words, the jury could find that Defendants acted with deliberate indifference. See Farmer, 511 U.S. at 834. Finally, the Court finds unpersuasive Defendants' claim that because the argument that precipitated the fight was concerning laundry, which is not what Plaintiff complained about, Defendants were not deliberately indifferent. Plaintiff complained about a threat to his safety, the threat was made shortly before the actual assault, and Defendants admit that Wood told Plaintiff that Wood would touch Plaintiff any time Wood wanted.[5]

The Court holds that there is a material dispute of fact regarding whether Wood threatened Plaintiff before the assault and whether Plaintiff so informed Defendants. This dispute of fact precludes summary judgment.

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. # 40) is **denied**.

DATED this 17th day of July, 2008.

_____
James A. Teilborg
United States District Judge

---

[5] The Court will not consider Defendants' argument that Hernandez did nothing other than inform her supervisors because the argument was not raised until the reply. See Cedano-Viera v. Ashcroft, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003)